MULL v EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES

Docket No. 127472. Submitted March 3, 1992, at Detroit. Decided
October 19, 1992, at 10:25 A.M. Leave to appeal sought.

William and Dorothy Mull brought an action in the Wayne
Circuit Court against Equitable Life Assurance Society of the
United States, Midwest Malls Limited Partnership, and the
Rouse Company, seeking damages under the motor vehicle
owner's liability statute, MCL 257.401; MSA 9.2101, for work-
related injuries sustained by William Mull as a result of an
accident that occurred while he was standing in the bucket of a
front-end loader to hang a Christmas wreath at a shopping
mall. The defendants moved for summary disposition, alleging
that the front-end loader was not a motor vehicle for purposes
of the statute and, alternatively, that it was not being used as a
vehicle at the time of the accident. The court, Lucile A. Watts,
J., found that the front-end loader was a motor vehicle for
purposes of the statute and denied the defendants' motion. The
jury found that Michael Koss, the operator of the front-end
loader at the time of the accident, was negligent in the opera-
tion of the machine and that his negligence was a proximate
cause of William Mull's injuries. The court entered judgment
for the plaintiffs consistent with the verdict of the jury. Follow-
ing denial of the defendants' motions for judgment notwith-
standing the verdict, a mistrial, or a new trial, Equitable Life
and Midwest Malls appealed.

The Court of Appeals *held:*

1. The front-end loader is a "motor vehicle" under the
owner's liability statute. Section 79 of the Vehicle Code, MCL
257.79; MSA 9.1879, does not require that a device be capable
of lawfully being operated on a highway in order for it to be
considered a vehicle for purposes of the owner's liability stat-

REFERENCES

Am Jur 2d, Automobile Insurance § 4; Automobiles and Highway
Traffic § 641; Evidence § 180; Trial § 596.

Adverse presumption or inference based on party's failure to pro-
duce or examine witness with employment relationship to party
—modern cases. 80 ALR4th 405.

ute. The definitions of "motor vehicle" in MCL 257.33; MSA 9.1833, and "vehicle" in MCL 257.79; MSA 9.1879 clearly include within their purview the front-end loader involved in the accident.

2. The front-end loader does not fit the definition of "farm tractor" provided in MCL 257.16; MSA 9.1816.

3. Because the plaintiffs brought their action solely under the owner's liability statute, the no-fault act is inapplicable in this case and the defendants' argument that the front-end loader was not being used "as a motor vehicle" within the meaning of the no-fault act at the time of the accident is irrelevant.

4. The plaintiffs presented sufficient circumstantial evidence of Michael Koss' negligence to allow the case to be submitted to the jury.

5. The trial court did not abuse its discretion in refusing to instruct the jury, pursuant to the defendants' request, that negligence could not be inferred solely from the fact that an accident occurred. The jury was not under the impression that negligence could be inferred in that manner. The instructions given presented the theories of the parties and the applicable law fairly and adequately.

6. The trial court erred in refusing to allow defense counsel to argue that, because the plaintiff failed to call Michael Koss as a witness, the jury could draw an inference against the plaintiffs. However, the error was not so prejudicial that it warrants reversal.

Affirmed.

GRIBBS, J., *dissenting,* stated that the front-end loader cannot be considered a motor vehicle under the owner's liability statute because it was not designed for highway use and was not being operated on a highway when William Mull was injured.

1. AUTOMOBILES — VEHICLE CODE — OWNERS' LIABILITY ACT.

The Vehicle Code does not require that a device be capable of lawfully being operated on a highway in order for it to be considered a vehicle for purposes of the owners' liability statute (MCL 257.33, 257.79; MSA 9.1833, 9.1879).

2. WITNESSES — FAILURE TO CALL — INFERENCES.

It is proper for counsel to comment upon the failure of the opposing party to call a witness and to argue that the jury may draw an inference against that party.

*Swanson, Torgow & Lyons, P.C.* (by *Peter J. Lyons* and *Paul R. Swanson*), for the plaintiffs.

*Richard A. Kudla & Associates* (by *Richard A. Kudla* and *Victoria P. Lupo*), (*Gross & Nemeth,* by *James G. Gross,* of Counsel), for the defendants.

Before: NEFF, P.J., and GRIBBS and MURPHY, JJ.

NEFF, P.J. Defendants Midwest Malls Limited Partnership and Equitable Life Assurance Society of the United States appeal as of right from a judgment entered following a jury verdict in favor of plaintiffs. We affirm.

I

William Mull suffered serious personal injuries as a result of a work-related accident that occurred while he was hanging a Christmas wreath at the Southland Mall. At the time of the accident, William Mull was standing in the bucket of a Ford Tractor 3400, a "front-end loader."

Plaintiffs filed this negligence action under the owner's liability statute, MCL 257.401; MSA 9.2101. They sought damages incurred as a result of William Mull's injuries, including Dorothy Mull's loss of her husband's love, society, companionship, and consortium.

Defendants moved for summary disposition under MCR 2.116(C)(10) on the grounds that the front-end loader was not a motor vehicle for purposes of MCL 257.401; MSA 9.2101 and, alternatively, that the device was not being used as a motor vehicle at the time of the accident.

The trial court found that the front-end loader was a motor vehicle for purposes of the owner's liability statute. It denied defendants' motions for summary disposition and rehearing or reconsideration.

At trial, William Mull testified that Michael

Koss was the "lead man" on the day of the accident and that Koss instructed him, Todd Wilkerson, and Jeanette Ramik to hang Christmas wreaths. Koss was operating the front-end loader, which they used to hang the wreaths.

William Mull testified that he had operated the front-end loader on numerous occasions before the accident and that it had four tires, a steering wheel, four forward gears and reverse, brakes, a windshield, and two headlights located on top of the cab. It did not have a license plate, back-up lights, turn indicators, or hazard lights. He further testified that the bucket of the front-end loader operates hydraulically and is controlled by two levers. One lever controls the up and down movement of the bucket, and the other lever moves the bucket forward and backward.

According to William Mull, Wilkerson was supposed to lower each wreath by a rope from the roof, while William Mull and Ramik attached the wreaths to the outside wall and Koss operated the front-end loader. He stated that, in preparation for hanging the wreaths, Koss positioned the front-end loader on the sidewalk with the bucket approximately eighteen inches from the wall. Koss lowered the bucket, and William Mull and Ramik climbed into it. Koss then raised the bucket seven or eight feet so that they could affix the first wreath. William Mull further stated that, after Ramik pushed the wreath into position and he fastened the bottom of the wreath, he gave Koss the "thumbs up" signal, which meant that Koss should raise the bucket straight up. However, instead of going straight up, the bucket of the front-end loader moved up and forward, hitting the wall and crushing William Mull's right foot between the blade of the bucket and the wall. The foot was later surgically removed.

The jury found that Koss was negligent in the operation of the front-end loader and that his negligence was a proximate cause of William Mull's injuries. The trial court entered judgment in plaintiffs' favor consistent with the jury verdict.

Defendants moved for judgment notwithstanding the verdict, a mistrial, or a new trial. The trial court denied these motions.

II

Defendants first claim that the front-end loader was not a "motor vehicle" under the owner's liability statute, MCL 257.401; MSA 9.2101, because it could not lawfully be operated on a highway. We disagree.

In denying defendants' motion for summary disposition, the trial court expressly relied on *Harder v Harder*, 176 Mich App 589; 440 NW2d 53 (1989), and concluded that the front-end loader came within the definition of "motor vehicle" under the owner's liability statute.

The owner's liability statute provides in pertinent part:

Nothing herein contained shall be construed to abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a *motor vehicle*, his or her agent or servant. The owner of a *motor vehicle* shall be liable for any injury occasioned by the negligent operation of the *motor vehicle* whether the negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in the operation of the motor vehicle as the rules of the common law requires. The owner shall not be liable, however, unless the *motor vehicle* is

being driven with his or her express or implied consent or knowledge. [MCL 257.401(1); MSA 9.2101(1). Emphasis added.]

In determining whether the front-end loader meets the definition of a motor vehicle under the owner's liability statute, this Court must attempt to ascertain and give effect to the intent of the Legislature. *Joy Management Co v Detroit,* 176 Mich App 722, 730; 440 NW2d 654 (1989); *Harder, supra,* p 591.

In *Frazier v Rumisek,* 358 Mich 455, 457; 100 NW2d 442 (1960), the Court reviewed the owner's liability statute in effect at that time, which was substantially the same as the present statute, and stated:

> The owner liability statute before us was passed in response to an overwhelming public need. Common-law liability, circumscribed as it was by the doctrine of bailment, *respondent superior,* agency, and the like, was unable to cope with the rising tide of injuries resulting from the use of the new mechanism, the automobile. Principal among the legislative answers were the owner liability laws. Their purpose, as Mr. Justice Edwards held in *Moore v Palmer,* 350 Mich 363 [86 NW2d 585 (1957)], was to extend and complement the common law. The legislative theory was simple to state and broadly applicable: An owner was liable for the negligent operation of the machine owned by him when he had consented to its use.

See also *Dale v Whiteman,* 388 Mich 698, 703; 202 NW2d 797(1972), and *Calladine v Hyster Co,* 155 Mich App 175, 178-179; 399 NW2d 404 (1986).

In *Roberts v Posey,* 386 Mich 656, 662; 194 NW2d 310 (1972), the Court construed the owner's liability statute and stated:

The purpose of the statute is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle.

Where a statute supplies its own glossary, this Court must apply the meaning of the terms as expressly defined. *Harder, supra.* The owner's liability statute is part of the Vehicle Code, MCL 257.1 *et seq.*; MSA 9.1801 *et seq.* The Vehicle Code expressly defines "motor vehicle" as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." MCL 257.33; MSA 9.1833. Section 79 of the Vehicle Code also defines the term "vehicle." It states in pertinent part:

> "Vehicle" means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices exclusively moved by human power or used exclusively upon stationary rails or tracks and excepting a mobile home. [MCL 257.79; MSA 9.1879.]

The dispositive question in resolving this issue is whether the front-end loader is a "vehicle" under the above definition.

In *Calladine, supra,* pp 180-181, this Court defined the meaning of the "is or may be" language found in MCL 257.79; MSA 9.1879, stating:

> Where a device is not actually transported or drawn upon a highway and where it cannot *lawfully* be operated on a highway, it is not a vehicle within the purview of the owner's liability statute. That is the meaning of the "is or may be" language found in MCL 257.79; MSA 9.1879. This reading of the statute comports with the legislative design to deal primarily with injuries occa-

sioned by automobiles, as set out in *Frazier, supra.*
[Emphasis added.]

The vehicle involved in *Calladine* was a forklift
that was not equipped with a windshield, head-
lights or taillights, turn signals, seat belts, back-up
lights, hazard warning flashers, or a rearview
mirror. The Court in *Calladine* concluded that
because the forklift could not lawfully be driven
upon a highway and because it was never driven
upon a highway, it was not a motor vehicle under
the owner's liability statute. *Calladine, supra,* p
181.

*Jones v Cloverdale Equipment Co,* 165 Mich App
511; 419 NW2d 11 (1987), also involved the issue
whether a forklift was a vehicle under the owner's
liability statute. The *Jones* Court concluded that,
because the forklift had no headlights or taillights,
no turn signals, no windows or doors, and lacked
registration or licensing, under *Calladine,* it was
not a "vehicle"—and therefore not a "motor vehi-
cle"—for purposes of the owner's liability statute.
*Id.,* p 514.

If we were to apply the analyses set forth in
*Calladine* and *Jones,* we would have to find that
the front-end loader is not a motor vehicle for
purposes of the owner's liability statute. Like the
forklifts in *Calladine* and *Jones,* the front-end
loader lacks many of the characteristics deemed
essential by the *Calladine* and *Jones* Courts for a
device to be capable of lawful operation on a
highway and therefore to be considered a motor
vehicle.

We disagree, however, with the *Calladine*
Court's interpretation of the "is or may be" lan-
guage in the definition of "vehicle." A review of
general principles of statutory construction leads
us to this conclusion. Nothing will be read into a

statute that is not within the manifest intention of the Legislature as gathered from the act itself. *Jefferson Schools v Detroit Edison Co,* 154 Mich App 390, 393; 397 NW2d 320 (1986). The Legislature is presumed to have intended the meaning plainly expressed, and the statute must be enforced as written. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453 NW2d 301 (1990). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989).

In our view, nothing in the language of § 79 of the Vehicle Code permits this Court to impose the requirement that a device must be capable of *lawfully* being operated on a highway in order for it to be considered a vehicle for purposes of the owner's liability statute. If the Legislature had intended to limit ownership liability to those devices that could *lawfully* be operated on a highway, it would have used such language to carry out its intent. See *Ladner v Vander Band,* 376 Mich 321, 327; 136 NW2d 916 (1965). The definitions in MCL 257.33; MSA 9.1833 and MCL 257.79; MSA 9.1879 clearly include within their purview the vehicle involved in the accident that injured William Mull. There is nothing in either statutory definition to suggest that vehicles that meet the definitional requirements be capable of lawful operation on the highway.

We need not address the issue whether the owner's liability statute was modified by the no-fault act because this case was brought solely under the owner's liability statute and because the trial court did not address this issue.

We conclude, for reasons other than those found by the trial court, that the front-end loader is a "motor vehicle" under the owner's liability stat-

ute. Where a trial court has reached the right result for the wrong reason, this Court will not reverse. *Reisman v Regents of Wayne State Univ*, 188 Mich App 526, 530; 470 NW2d 678 (1991).

III

Plaintiffs also argue that liability was properly imposed under the owner's liability statute because the front-end loader fits the definition of "farm tractor" contained in the Vehicle Code, noting that it could lawfully be driven on a highway as long as it had a reflective device, and, therefore, that it was a "motor vehicle." We are not convinced that the front-end loader fits the definition of "farm tractor" contained in MCL 257.16; MSA 9.1816. That statute states:

"Farm tractor" means every motor vehicle designed and used primarily as a farm implement for drawing plows, mowing machines, and other implements of husbandry.

While plaintiffs refer to the front-end loader as a "tractor," there is no indication that it is a farm tractor under this statute.

IV

Defendants also argue that even if the front-end loader is a "motor vehicle" for purposes of the owner's liability statute, it was not being used "as a motor vehicle" within the meaning of the no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, at the time of the accident. Again, however, plaintiffs brought this case solely under the owner's liability statute. Accordingly, the no-fault act is inapplicable to this case.

V

Defendants next argue that they are entitled to judgment as a matter of law because there was insufficient evidence to show that Koss acted negligently. At the conclusion of plaintiffs' proofs, defendants unsuccessfully moved for a directed verdict on the ground that there was no direct evidence that Koss acted negligently. They now claim that plaintiffs failed to demonstrate that Koss saw William Mull give the "thumbs up" hand signal or that Koss' response to the hand signal was voluntary. We find that plaintiffs presented sufficient circumstantial evidence of Koss' negligence to allow this case to be submitted to the jury.

When reviewing a claim that there was insufficient evidence presented in a civil case, this Court views the evidence in a light most favorable to the plaintiff and gives the plaintiff the benefit of every reasonable inference that can be drawn from the evidence. If, after viewing the evidence, reasonable people could differ, the question properly is left to the trier of fact. *Boggerty v Wilson,* 160 Mich App 514, 522; 408 NW2d 809 (1987). Circumstantial evidence and permissible inferences therefrom may constitute sufficient proof of negligence. *Duke v American Olean Tile Co,* 155 Mich App 555, 566; 400 NW2d 677 (1986); *May v Parke, Davis & Co,* 142 Mich App 404, 417; 370 NW2d 371 (1985).

As noted above, William Mull testified that Koss was the "lead man" and that he instructed him that they were going to hang Christmas wreaths. Mull got into the bucket of the front-end loader when directed to do so by Koss. Ramik confirmed that Koss was in charge of the wreath-hanging operation and stated that Koss was a "qualified operator."

William Mull said that it was the general prac-

tice at his work to lock the emergency brake on
the front-end loader so that it could not move. He
also stated that employees were instructed not to
have the front-end loader in gear when using it as
a lifting device. Both William Mull and Ramik
testified that Koss was operating the front-end
loader on the date of the accident. William Mull
said that he and Koss had a specific set of hand
signals that were to be used when operating the
front-end loader and that he gave Koss the "up"
signal. Ramik confirmed that William Mull gave
the "up" signal and that, although he gave the
"up" signal, the device moved forward and then
up.

Viewing the evidence in the light most favorable
to plaintiffs, we conclude that plaintiffs presented
sufficient evidence of Koss' negligence to submit
the case to the jury and that reasonable people
could differ with regard to whether Koss negli-
gently operated the front-end loader.

VI

Defendants also argue that the trial court erred
in refusing to instruct the jury that negligence
could not be inferred solely from the fact that an
accident occurred.

The trial court has discretion to give additional
instructions not covered by the standard jury in-
structions as long as they are applicable and accu-
rately state the law and are concise, understand-
able, conversational, unslanted, and nonargumen-
tative. MCR 2.516(D)(4); *Wengel v Herfert*, 189
Mich App 427, 431; 473 NW2d 741 (1991). A sup-
plemental instruction need not be given if it would
add nothing to an otherwise balanced and fair jury
charge and would not enhance the ability of the
jury to decide the case intelligently, fairly, and

impartially. *Houston v Grand Trunk W R Co,* 159 Mich App 602, 609; 407 NW2d 52 (1987).

On appeal, jury instructions are reviewed in their entirety, rather than extracted piecemeal to establish error in isolated portions. *Wiegerink v Mitts & Merrill,* 182 Mich App 546, 548; 452 NW2d 872 (1990); *Willoughby v Lehrbass,* 150 Mich App 319, 336; 388 NW2d 688 (1986). There is no error requiring reversal, if on balance, the theories of the parties and the applicable law were fairly and adequately presented to the jury. *Wiegerink, supra.* The trial court's decision regarding supplemental instructions will not be reversed unless failure to vacate the verdict would be inconsistent with substantial justice. *Niemi v Upper Peninsula Orthopedic Associates, Ltd,* 173 Mich App 326, 328-329; 433 NW2d 363 (1988).

The trial court instructed the jury on the definitions of "negligence," "ordinary care," "proximate cause," and "burden of proof." The court also instructed the jury:

> The Plaintiff has the burden of proof on each of the following propositions: (A), that the Plaintiff was injured; (B), that the Defendant was negligent in one or more of the ways claimed by the Plaintiff as stated to you in these instructions; (C) that the negligence of the Defendant was a proximate cause of the injuries to the Plaintiff.

After reviewing the jury instructions in their entirety, we conclude that the trial court presented the theories of the parties and the applicable law fairly and adequately. We do not believe that the jurors were under the impression that they could infer negligence solely from the fact that an accident occurred. There was no abuse of discretion in the trial court's refusal to give the requested instruction. Our failure to vacate the

verdict on this basis is not inconsistent with substantial justice.

VII

Defendants claim that the trial court erred in precluding defense counsel from pointing out that plaintiffs had not called Koss as a witness and from arguing that the jury may draw an inference against plaintiffs because of their failure to do so. We agree, but find that the error does not require reversal.

During closing argument, defense counsel pointed out that Koss did not testify at trial. After counsel for plaintiffs objected, the trial court instructed the jury that either party could have called Koss. Defense counsel then argued to the jury that Koss did not testify and that it is plaintiffs' obligation to prove their case by a preponderance of the evidence. Defendants unsuccessfully moved for a mistrial on the ground that the trial court excluded defense counsel's remarks.

It is proper for counsel to comment upon the failure of the opposing party to call a witness and to argue that the jury may draw an inference against the party who fails to call the witness. *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 109; 330 NW2d 638 (1982); *Troyanowski v Village of Kent City,* 175 Mich App 217, 223; 437 NW2d 266 (1988). Accordingly, the trial court erred in refusing to allow defense counsel to argue that, because plaintiffs failed to call Koss as a witness, the jury could draw an inference against plaintiffs. However, we are not convinced that this error was so prejudicial that it warrants reversal.

Affirmed.

Murphy, J., concurred.

GRIBBS, J. *(dissenting).* I respectfully dissent. First, I do not agree with the majority's suggestion that the panel in *Calladine v Hyster Co,* 155 Mich App 175; 399 NW2d 404 (1986), read into the statute a meaning not intended by the Legislature. As noted in *Calladine,* p 181, the Legislature evidently intended the statute to "deal primarily with injuries occasioned by automobiles." See *Frazier v Rumisek,* 358 Mich 455, 457; 100 NW2d 442 (1960).

It appears to me that the tractor in this case is far closer to being a "vehicle" than the forklift at issue in *Calladine.* Unlike the forklift in *Calladine,* the tractor in this case had headlights, seat belts, a windshield, flashers, and rearview mirrors. Moreover, unlike the forklift in *Calladine,* the tractor in this case had been driven on a highway, though apparently only for needed repairs.

Even so, the tractor in this case lacks many of the equipment features required by the Vehicle Code. The headlights are not a proper distance from the ground, MCL 257.685(c); MSA 9.2385(c). The tractor has no turn signals, MCL 257.697a; MSA 9.2397(1), hazard lights, MCL 257.698a; MSA 9.2398(1), or sideview mirrors, MCL 257.708; MSA 9.2408. It was not registered. For at least the past seventeen years, the tractor had been operated on the premises of the shopping mall where the injury occurred, not on the public highway.

In addition, even if the tractor in this case is a "vehicle," it clearly was not designed for highway use and it is, therefore, not a "*motor* vehicle" under the Vehicle Code unless it was actually being operated on a highway at the time of the accident. *Jones v Cloverdale Equipment Co,* 165 Mich App 511, 514; 419 NW2d 11 (1987). See also *DAIIE v Spafford,* 76 Mich App 85, 89; 255 NW2d 780 (1977). It is undisputed that the accident in

this case occurred in the parking lot of a shopping mall, not on a highway.

As noted previously, this is not a case where the tractor at issue is lacking a single headlight or some other solitary feature required by the Vehicle Code. In this case, in addition to lacking the most basic safety equipment, the tractor has no speedometer, is only capable of speeds up to twenty-five miles an hour, and cannot be operated on a public highway without special safety precautions. See, e.g., MCL 257.688; MSA 9.2388. Indeed, on the few occasions this tractor was operated on a public highway, it was operated with a vehicle following it. MCL 257.686(4)(b); MSA 9.2386(4)(b). In light of these facts, it cannot be seriously argued that the tractor in this case was designed for highway use.

Because the tractor in this case was not designed for highway use and was not being operated on a highway when William Mull was injured, it cannot be considered a "motor vehicle" as that term is used in the owner's liability statute. *Id.*; MCL 257.33; MSA 9.1833. Accordingly, I would reverse.